IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IBRAHIM OSMAN IBRAHIM IDRIS, *et al.*,

Petitioners,

v.

GEORGE W. BUSH, President of the United States, *et al.,*

Respondents.

Civil Action Nos. 05-CV-1555 (JR)
05-CV-1725 (JR)
(consolidated)

**RESPONDENTS' REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING RELATED APPEALS**

Respondents hereby submit this reply memorandum in support of their motion for order to show cause why case should not be dismissed for lack of proper "next friend" standing, or, in the alternative, to stay proceedings pending related appeals.[1]

[1] Petitioners argue that respondents engaged in "litigation gamesmanship" by filing a motion for order to show cause that did not "seek entry of the order to show cause" which petitioners believe resulted in "no briefing schedule entered in the matter, and [therefore, respondents'] application has languished on the court docket." See Petitioners' Memorandum of Law in Further Support of Motion for the Immediate Issuance of a Writ of *Habeas Corpus*, or Alternatively for an Order to Show Cause in Edries v. Bush, No. 05-CV-1725 (JR) (dkt. no. 8) ("Pets' Mem."). To the contrary, respondents filed a motion consistent with this Court's Local Rules (see LCvR 7), in which respondents specifically requested that "the Court should order petitioners to show cause why these cases should not be dismissed for lack of proper next friend standing." Resps' Mot. at 21. Pursuant to the Local Rules, petitioners' opposition to respondents' motion was due "[w]ithin 11 days of the date of service or at such other time as the Court may direct." LCvR 7(b). Respondents' motion for order to show cause was filed and served via the Court's CM/ECF system on September 23, 2005; thus, after adding an extra three days provided by Federal Rule of Civil Procedure 6(e) to the 11 days for response provided by LCvR 7(b), petitioners' opposition to respondents' motion for order to show cause was due on

Respondents filed their motion for order to show cause in Edries v. Bush, No. 05-CV-1725 (JR), a petition for writ of habeas corpus not directly authorized by Abraham Othman Abrahim Edries, the detainee for whom habeas relief is sought, but instead brought by another detainee claiming to act on Mr. Edries's behalf, Bisher Al-Rawi. See Respondents' Motion for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing or, in the Alternative, to Stay Proceedings Pending Related Appeals in Edries v. Bush, No. 05-CV-1725 (JR) (dkt. no. 3) ("Resps' Mot."). Respondents also determined that Mr. Edries had previously filed a *pro se* petition for writ of habeas corpus as Ibrahim Osman Ibrahim Idris in Idris v. Bush, No. 05-CV-1555 (JR). See Notice of Multiple Petitions Filed by Guantanamo Bay Detainee in Idris v. Bush, No. 05-CV-1555 (dkt. no. 3). On October 21, 2005, because there were multiple petitions pending on behalf of this detainee, the Court ordered, *sua sponte*, that the cases be consolidated, and that next friend petitioner Bisher Al-Rawi in Edries be transferred to Idris, which was designated as the lead case. See Order dated October 21, 2005 in Idris v. Bush, No. 05-CV-1555 (JR) (dkt. no. 6).

Respondents are not challenging the legitimacy of the *pro se* petition filed by Mr. Idris, which is directly authorized by the detainee for whom habeas relief is sought, and the existence of the direct petition by Mr. Idris obviates and undermines the need and propriety of a purported next friend petition on Mr. Idris's behalf by Bisher Al-Rawi. To the extent that the consolidation of these cases has somehow converted the Idris case into a petition brought by Bisher Al-Rawi acting in a purported "next friend" capacity, however, respondents object to counsel's ability to

October 7, 2005. Petitioners' response to respondents' motion was not filed until October 17, 2005.

sue on Mr. Idris's behalf in this fashion. Petitioners must establish that they have proper standing to sue before the Court can exercise jurisdiction over the next friend case, and Bisher Al-Rawi, the detainee who purports to seek habeas relief on behalf of Mr. Idris, has not demonstrated that he possesses proper "next friend" standing to sue on behalf of Mr. Idris under the two-pronged standard articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990). Because Mr. Idris has already filed a *pro se* petition, however, which has been consolidated with the purported "next friend" petition, this jurisdictional defect can be cured by dismissing Bisher Al-Rawi as a petitioner in this case.[2]

If Bisher Al-Rawi is dismissed as a petitioner in this case and the Court's jurisdiction is established, the case nonetheless should be stayed pending resolution of all appeals in Khalid v. Bush, Boumediene v. Bush, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No. 05-5064 (D.C. Cir. Mar. 10, 2005). The pending appeals will address the core issues in this case and, thus, determine how this case should proceed, if at

---

[2] After respondents filed a notice regarding the multiple petitions filed by this detainee, counsel in the Edries "next friend" case, Debevoise & Plimpton, LLP, filed a motion to appoint themselves as counsel for Mr. Idris in the Idris case, the *pro se* case filed by this detainee. See Motion for Appointment as Counsel in Idris v. Bush, No. 05-CV-1555 (JR) (dkt. no. 4). Because respondents have taken steps to facilitate legal representation for detainees who have indicated a desire to challenge the legality of their detention, see infra at 5-6, and recognizing that the Judges of the District Court have appointed Federal Defender Offices to represent other Guantanamo Bay detainees who have filed *pro se* petitions, see Order dated October 5, 2005 in In re Guantanamo Detainee Cases, No. 05-CV-1008, et al., respondents have taken no position on counsel's motion to appoint themselves as counsel for Mr. Idris in his *pro se* case. See Respondents' Response to Motion for Appointment as Counsel in Idris v. Bush, No. 05-CV-1555 (JR) (dkt. no. 5).

all. Further proceedings, including the submission of factual returns, would require the expenditure of significant judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated once the appeals are decided and the Court of Appeals provides guidance regarding handling of the claims in all of the Guantanamo detainee cases.

## ARGUMENT

### I. Petitioners Have Failed to Establish that Bisher Al-Rawi is a Proper "Next Friend" in the Above-Captioned Case, and He Should Be Dismissed as a Petitioner in this Case.

Bisher Al-Rawi, the detainee who is seeking habeas relief on behalf of detainee Idris, bears the burden of establishing proper standing to sue as a prerequisite to the Court's exercise of jurisdiction over this "next friend" petition. See Elk Grove Unified School District v. Newdow, 124 S. Ct. 2301, 2308 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action."); Warth v. Seldin, 422 U.S. 490, 517-18 (1975) ("The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention."). To establish standing in this "next friend" case, therefore, petitioners must demonstrate that (1) Mr. Idris — the real party in interest — cannot challenge the legality of his detention himself; and (2) the purported "next friend" has a significant relationship with Mr. Idris to show that he is truly dedicated to Mr. Idris's best interests. See Whitmore, 495 U.S. at 163-64.[3] Petitioners have yet to satisfy either requirement.

---

[3] Petitioners erroneously characterize respondents' motion for order to show cause as arguing that petitioners "failed to present affirmative evidence that Petitioner Edries wants a *habeas* proceeding filed on his behalf." Pets' Mem. at 9. Not only is this inquiry not part of the

As explained in the declarations submitted in support of respondents' motion, respondents have provided every detainee with adequate means and opportunity to file a habeas petition in order to meaningfully challenge the lawfulness of his detention. The Department of Defense ("DoD") has notified each of its detainees at Guantanamo Bay of his right to file a petition for habeas corpus ("You may ask a civilian judge to look at the lawfulness of your detention . . ."), and has provided each detainee with the address of the United States District Court in the event that he desires to submit his own petition to the Court. See (Second) Declaration of Frank Sweigart, ¶¶ 3-5. Although petitioners would like the Court to believe that the detainees are being held "incommunicado," in fact, all detainees possess the opportunity to send and receive mail through the Military's mail delivery and collection system or through the International Committee for the Red Cross. See id., Ex. D. As a result, all detainees may write to friends, family members, or attorneys to request assistance with filing a habeas petition, if they so desire, or they may write and send a *pro se* petition to the Court themselves. Indeed, Mr. Idris has already submitted a *pro se* petition on his own behalf.[4] Moreover, DoD has taken affirmative

---

Whitmore two-pronged standard, but it is a non-issue since respondents concede that Mr. Idris desires to challenge the legality of his detention, as evidenced by the *pro se* petition that he wrote and mailed to the Court. The issue in this case is not whether Mr. Idris wants to file a habeas petition, but whether a petition on his behalf may proceed through a next friend. As demonstrated infra, Bisher Al-Rawi, who seeks next friend status in this action, has not demonstrated that Mr. Idris cannot challenge the legality of his detention himself (indeed, Mr. Idris has already done so), and has not established that he has a significant relationship with Mr. Idris to show that he is truly dedicated to Mr. Idris's best interests. See Whitmore, 495 U.S. at 163-64. Consequently, a petition for habeas relief on behalf of Mr. Idris must proceed as a directly authorized petition, and not through Bisher Al-Rawi acting in a purported next friend capacity.

[4] Petitioners contend that Mr. Idris' *pro se* petition allegedly "took six months to be delivered." Pets' Mem. at 11. While the details pertaining to the timing of the filing of the *pro se* petition in this matter have not been tracked down, even assuming that the date written on the

steps to facilitate legal representation for detainees who have indicated a desire to challenge the legality of their detention (including Mr. Idris) by providing them with a form to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring representation.  See (Second) Sweigart Declaration, ¶ 7.  Petitioners cannot reasonably argue that the detainees at Guantanamo Bay are unable to seek habeas relief when scores of cases involving well over 200 detainees are pending before the Court,[5] including 55 *pro se* petitions that detainees (including Mr. Idris) mailed directly to the Court, and at least 18 petitions filed as a result of detainees initiating direct contact with counsel.  See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed has been denied access to the courts of the United States. . . . In light of the fact that several pro se petitions have been filed recently by Guantanamo Bay detainees, Ahmed's lack of access to this court cannot be presumed, but must be established."); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("[The petition] states only that [Hamlily] is 'being held essentially communicado' and that 'his family members have not been able to contact U.S. counsel to file a petition on his behalf.' . . . There is a serious question as to whether this alone is sufficient to establish Hamlily's inability to prosecute this action on his own behalf.").  Given that Mr. Idris has filed a *pro se* petition on his own behalf, petitioners cannot reasonably argue that Mr. Idris

---

petition by Mr. Idris is correct, respondents maintain that outgoing mail by detainees is typically processed within fourteen days on average.  See (Second) Sweigart Declaration, Ex. D.

[5]  There are presently 160 cases pending before the Court on behalf of approximately 290 petitioners, although this number includes detainees who filed multiple petitions.  Respondents also have been unable to identify over one dozen of these petitioners as detainees at Guantanamo Bay.

cannot challenge the legality of his detention. Based on this record, petitioners cannot satisfy the first prong of the Whitmore test.[6]

Bisher Al-Rawi, the purported "next friend" in this case, has also yet to demonstrate that he has a "significant relationship" with Mr. Idris such that he is "truly dedicated to [his] best interests." See Whitmore, 495 U.S. at 163-64.[7] Petitioners have not provided any evidence to show that Mr. Al-Rawi has any sort of "significant relationship" with Mr. Idris, the detainee on

---

[6] Petitioners improperly blame respondents for their "reliance on general affidavit evidence" regarding the circumstances under which Mr. Idris was notified of his ability to seek habeas relief. Pets' Mem. at 12. Not only does this ignore that it is *petitioners'* burden to establish that Mr. Idris is unable to challenge the legality of his detention so as to justify next friend standing in this case, see Whitmore, 495 U.S. at 154 ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue . . ."); id. at 163 ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."), it disregards the fact that a large number of *pro se* and other petitions have been filed in response to the notices provided to detainees regarding their ability to contact the Court or others to pursue habeas relief. The fact that scores of cases involving well over 200 detainees are pending before the Court, including a *pro se* petition written and mailed to the Court by Mr. Idris, establishes that respondents have not confined the detainees in conditions that preclude them from vindicating their right to challenge the lawfulness of their detention and confirms that the detainees can effectively access the courts and counsel if they choose to do so. While respondents have not prohibited detainees from exercising their legal rights, respondents also do not have any obligation to actively prod these detainees to take advantage of their ability to file habeas petitions in U.S. courts. Some detainees simply may not want the U.S. courts to review the legality of their detention. See, e.g., Declaration of Tony F. De Alicante, filed on May 6, 2005 as Exhibit C to Reply in Support of Respondents' Motion to Dismiss Petition in John Does 1-570 v. Bush, No. 05-CV-0313 (CKK) (stating that as of May 5, 2005, four different detainees refused to accept legal mail from their attorneys, and several have stated that they do not want to be represented by counsel).

[7] As demonstrated in respondents' motion for order to show cause, the majority of Circuits that have been confronted with the issue have construed Whitmore to require a "significant relationship" as part of the second prong of the test for next friend standing. See Resps' Mot. at 9, n.7. Moreover, respondents do not take the position that detainees can *never* establish a significant relationship with other detainees in order to act as their proper next friends, but argue only that Bisher Al-Rawi has not done so in this case.

whose behalf he claims to seek habeas relief.[8]  The Court is left with no basis from which to conclude that this so-called "next friend" knows Mr. Idris in any meaningful way so as to ensure that he will genuinely pursue Mr. Idris's desires and interests, which is one of the primary motivations behind the next friend standing doctrine.  See Whitmore, 495 U.S. at 164 ("These limitations on the 'next friend' doctrine are driven by the recognition that it was not intended that the writ of habeas corpus should be availed of, as a matter of course, by intruders or uninvited meddlers, styling themselves next friends.") (internal quotations omitted).  Absent proof that evidences a significant relationship, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over this action as a "next friend" petition.

Thus, petitioners' suggestion that counsel (whether Debevoise & Plimpton, LLP or other counsel appointed by the Court) should be allowed to visit Mr. Idris in order to discover if he desires to pursue habeas relief, and thereby render respondents' motion for order to show cause moot, effectively puts the cart before the horse.  Counsel cannot avail themselves of the counsel access procedures contained in the Protective Order until they first establish that proper jurisdiction over the case exists by demonstrating the standing of the next friend (or, presumably,

---

[8] See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition does not provide basic personal facts about Ahmed, such as his citizenship, his age, whether he is married or has a family, the place of his arrest or capture, and the places of detention, if any, prior to his being transported to Guantanamo Bay.  The absence of such facts leaves the impression that Hassen does not know even this much about Ahmed and his situation."); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("The Court notes the total lack of any basic facts about Hamlily in the petition or other filings in this case -- most notably, the absence of any details concerning Hamlily's individual conditions of confinement (in contrast to the detainee population at large), including interrogations of Hamlily, inadequacies in his diet or medical care, or restrictions on, or interference with, the practice of his religion.  This lack of necessary factual information suggests that Aamer does not have a 'significant relationship' with Hamlily.").

by receiving appointment of counsel in Mr. Idris's direct petition). Counsel elected to file the next friend petition based on a letter purportedly sent on Mr. Idris's behalf by Bisher Al-Rawi, a fellow detainee, and are obligated to satisfy the requirements for next friend standing before any proceedings in the next friend case, including counsel visits, can move forward.[9] Petitioners should not be excused from the requirements for next friend standing articulated by the Supreme Court in Whitmore. In the absence of a demonstration that the standing requirements have not been met by Bisher Al-Rawi, this case may only proceed on the basis of the direct, *pro se* petition written and mailed to the Court by Mr. Idris on his own behalf; jurisdiction over the next friend petition is lacking.

**II. If Bisher Al-Rawi Is Dismissed as a "Next Friend" Petitioner, the Case Should be Stayed Pending Resolution of the Appeals of Decisions in the Other Guantanamo Detainee Cases Adjudicating Common Issues.**

If the Court dismisses Bisher Al-Rawi and converts this case solely into a direct petition by Mr. Idris so as to establish proper jurisdiction over this action, the Court should stay proceedings in this case pending the resolution of the appeals in Khalid, Boumediene and In re Guantanamo Detainee Cases, which will determine whether and how this case should proceed. The petition in this case raises legal issues that were squarely addressed by the opinions in In re Guantanamo Detainee Cases, Khalid, and Boumediene and that are raised in the appeals,

[9] Even the Protective Order and counsel access procedures typically made applicable in Guantanamo detainee habeas cases provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, 344 F. Supp. 2d 174, 185 (Ex. A) § III.C.1. (D.D.C. 2004). Counsel has yet to provide sufficient evidence of his "authority to represent" Mr. Idris in the context of a next friend action by Bisher Al-Rawi, i.e., he has yet to demonstrate the satisfaction of the requirements of next friend standing for Bisher Al-Rawi.

including: (1) whether the petitioners have stated valid claims under the Fifth Amendment to the United States Constitution and, if so, whether the procedures implemented by respondents to determine the status of petitioners violate their Fifth Amendment rights; (2) whether the petitioners have stated valid claims under the Third Geneva Convention;[10] and (3) whether the petitioners have stated valid claims based on various other legal theories, including other Constitutional provisions, other international treaties, Military regulations, the Administrative Procedure Act, the Alien Tort Statute, and customary international law. It makes no sense for proceedings related to the merits of this case to go forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals will determine the legal analyses applicable to this case and, indeed, whether and how this case should proceed.

In seeking a stay to the extent the next friend petitioner is dismissed, however, it makes no sense for the government to process and submit a factual return[11] with respect to Mr. Idris when the D.C. Circuit will be considering the proper scope of these habeas proceedings, including whether the claims can be dismissed without reference to specific factual returns. See Khalid, 355 F. Supp. 2d 311 (dismissing petitioners' claims in their entirety). Even if counsel had access to a factual return, they would not be able to share classified information in the return with Mr. Idris. See Amended Protective Order and Procedures for Counsel Access to Detainees

---

[10] In Hamdan v. Rumsfeld, 415 F.3d 33, 40 (D.C. Cir. 2005), the D.C. Circuit held that the Third Geneva Convention does not give rise to claims enforceable in court.

[11] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the Combatant Status Review Tribunal that confirmed petitioner's status as an enemy combatant properly subject to detention. The factual return is separate from briefing on legal issues in the cases. Factual returns include both classified and unclassified material.

at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174, 179 (¶ 30) (D.D.C. 2004). Thus, there is no reason why counsel need access to a factual return at this time.[12]

Moreover, the submission of factual returns which, in any event, may ultimately be unnecessary, burdens the government's resources and risks the inadvertent disclosure of classified information. Each factual return must be obtained from the Department of Defense, and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Each return can range from dozens to hundreds of pages, depending upon the circumstances. Thus, respondents face an immense logistical burden to process and file the returns, especially on the short, simultaneous schedules being requested by petitioners in the various cases. Further, submission of these returns vastly expands access to classified information contained in the returns, thereby increasing the risks of inadvertent or other disclosure or compromise of the information. These burdens and risks, however, could be rendered completely unnecessary, depending on the outcome of the appeals. Cf. Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 482 (staying cases so as to

---

[12] In this vein, various Judges of this Court have declined to require factual returns during the pendency of the stay. See, e.g., Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 5); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Attash v. Bush, No. 05-CV-1592 (RCL) (dkt. no. 12).

avoid expenditure of "substantial resources" and imposition of "significant burdens" that might not be necessary depending on outcome of appeal).

Although certain Judges of this Court have ordered respondents to submit factual returns in cases that are otherwise stayed, respondents oppose the submission of a factual return in this case for the reasons stated herein. If submission of factual returns were to go forward at all, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently filed cases are seeking factual returns and recognizing the logistical burdens posed by an undertaking to produce returns in the cases. In such circumstances, a schedule for the rolling production of factual returns in this case (and potentially other cases) over the next 10 to 12 weeks would be appropriate. In a number of other recent cases, the government has been given between 90 and 120 days to file factual returns, and respondents request that the Court impose a similar schedule, if the Court resolves the next friend issue and determines that a factual return should be provided. See e.g., Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12) (imposing 120-day schedule); Al-Joudi, No. 05-CV-0301 (GK) (dkt. no. 26) (imposing 90-day schedule); Al-Wazan, No. 05-CV-0329 (PLF) (dkt. no. 37) (imposing 90-day schedule); Al-Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing 120-day schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed, No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule).

**CONCLUSION**

For the reasons stated, petitioners have not demonstrated that Bisher Al-Rawi has established proper next friend standing in this case, and he should be dismissed as a petitioner in this action, thereby converting this case into a direct petition based on Mr. Idris's *pro se* petition,

which he submitted to the Court on his own behalf. If Bisher Al-Rawi is dismissed from this case, and this case is to proceed as a direct petition, the Court should stay further proceedings in this case, except as noted above, pending resolution of the appeals of Judge Leon's decision in Khalid and Boumediene and Judge Green's January 31, 2005 decision in In re Guantanamo Detainee Cases.

Dated: October 27, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

/s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-2000

Attorneys for Respondents

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 27, 2005, I caused a copy of the foregoing to be served on petitioner via U.S. Mail, First Class postage prepaid, at the following address:

      ISN 036
      Camp Delta; Guantanamo Bay
      Washington, D.C. 20355

        /s/ Preeya M. Noronha
      PREEYA M. NORONHA
      United States Department of Justice
      Civil Division, Federal Programs Branch

      One of the Attorneys for Respondents