UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------------------ x

IBRAHIM OSMAN IBRAHIM IDRIS,          :
     Detainee,
     Guantanamo Bay Naval Station          :
     Guantanamo Bay, Cuba,
               *Petitioner*,          :


             **v.**          :


GEORGE W. BUSH,          :
     President of the United States
     The White House          :   **AMENDED PETITION FOR**
     1600 Pennsylvania Ave., N.W.          **ISSUANCE OF A WRIT OF**
     Washington, D.C. 20500;          :   **HABEAS CORPUS**

DONALD RUMSFELD,          :   **Civil Action No.**
     Secretary, United States          **05-CV-1555 (JR)**
     Department of Defense          :
     1000 Defense Pentagon
     Washington, D.C. 20301-1000;          :

ARMY BRIG. GEN. JAY HOOD,          :
     Commander, Joint Task Force - GTMO
     JTF-GTMO          :
     APO AE 09360; and
                             :

ARMY COL. MICHAEL BUMGARNER,          :
     Commander, Joint Detention
       Operations Group - JTF-GTMO,          :
     JTF-GTMO
     APO AE 09360,          :
                             :

*Respondents.*
                             :


                             :

------------------------------------------------------------------------ x

This Amended Petition for Issuance of a Writ of Habeas Corpus ("Amended Petition"), is respectfully submitted on behalf of Petitioner Ibrahim Osman Ibrahim Idris ("Petitioner Idris"). A citizen of Sudan, Petitioner Idris is under detention at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). Petitioner Idris is a civilian who wrongly has been classified as an "enemy combatant" by the President of the United States and is being held virtually *incommunicado* in military custody at Guantánamo, without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention.

Petitioner Idris is being held under color and authority of the Executive Branch, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Petitioner Idris sent a letter to the Court, dated February 12, 2005, requesting assistance from the Court in contesting his detention. The Court converted that letter to a *pro se* petition for a writ of habeas corpus, which was filed on August 2, 2005. On November 9, 2005, the Court appointed undersigned counsel to represent Petitioner Idris. Accordingly, Petitioner Idris respectfully submits this Amended Petition requesting that the Court issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Idris or to establish in this Court a lawful basis for his initial and continued detention. Petitioner Idris also respectfully petitions this Court for injunctive and declaratory relief.

Pursuant to the President's authority as Commander in Chief, his authority under the laws and usages of war, or under the Executive Order of November 13, 2001, Respondents George W. Bush, President of the United States; Donald H. Rumsfeld, U.S.

1

Secretary of Defense; Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO; and Army Colonel Michael Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining custody and control over Petitioner Idris at Guantánamo.

## I.
## JURISDICTION

1.      Petitioner Idris brings this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242.  Petitioner Idris further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to the United States Constitution.  Because he seeks declaratory relief, Petitioner Idris also relies on Fed. R. Civ. P. 57.

2.      This Court is empowered under 28 U.S.C. § 2241 to issue the requested Writ of Habeas Corpus, and to entertain the Amended Petition filed by Petitioner Idris under 28 U.S.C. § 2242.  This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.      Petitioner Idris is a Sudanese citizen who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control.  *See pro se* Petition filed with the Court on August 2, 2005.  His Internment Serial Number ("ISN") is 036.

4.      Respondent George W. Bush is the President of the United States and Commander in Chief of the United States.  Petitioner Idris is being detained pursuant to President Bush's authority as Commander in Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("the Executive Order").  President Bush is responsible for Petitioner Idris' initial and continued unlawful detention and is sued in his official capacity.

5.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to the President's authority as Commander in Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Idris.  He is sued in his official capacity.

6.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force charged with operating the detention facilities at Guantánamo Bay.  He has supervisory responsibility for Petitioner Idris and is sued in his official capacity.

3

7.      Respondent Army Col. Michael Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Idris is presently held.  He is the immediate custodian responsible for Petitioner Idris' detention and is sued in his official capacity.

8.      Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo.  All references to Respondents' actions in the Amended Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

9.      Upon information and belief, Petitioner Idris is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the United States government in any civil or military proceeding.

10.      Upon information and belief, Petitioner Idris is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

11.      Upon information and belief, at the time of his seizure and detention, Petitioner Idris was not a member of  the Taliban Government's armed forces or Al

4

Qaeda, nor did he cause or attempt to cause any harm to American personnel or property prior to his detention.

12.     Petitioner Idris remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.  He has been incarcerated there since early 2002.

13.     Petitioner Idris seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' classification of him as an "enemy combatant" as defined by the United States Supreme Court in *Hamdi*, or an "enemy combatant" as that term is defined and used by the Executive Branch of the United States government in the Combatant Status Review Tribunals.

14.     Petitioner Idris has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

### The Authorization for Use of Military Force by Congress

15.     In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, the then ruling power in Afghanistan (the "Armed Conflict").

16.     On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that]

5

harbored such organizations or persons." Joint Resolution, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Sept. 18, 2001) (the "AUMF") (attached hereto as Exhibit 1).

17.    Upon information and belief, Petitioner Idris did not participate in an armed conflict against the United States at any point in time; therefore, he is not properly detained pursuant to President Bush's authority as Commander in Chief, under the laws and usages of war, or under the AUMF.

**The Executive Order**

18.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

> i.    is or was a member of the organization known as Al Qaeda;
> ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
> iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §§ 2-3 (Nov. 13, 2001) (the "Executive Order") (attached hereto as Exhibit 2).  President Bush must make in writing the determination contemplated by the Executive Order.  The Executive Order was neither authorized nor directed by Congress and is beyond the scope of the AUMF.

19.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  *See* Exhibit 2, Executive

Order, § 2.  It establishes no standards governing the exercise of his discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face or of the evidence, if any, upon which such charges purport to be based.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic or international law and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  In fact, the Executive Order expressly bars review by any court.  Exhibit 2, Executive Order, § 7(b).  The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than Respondent Bush's written determination that an individual is subject to its terms.

20.    The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner Idris was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner Idris at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Idris, was, and is, being made by Respondents in the United States and in this judicial district.

21.    Upon information and belief, Respondent Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Idris is subject to the Executive Order.

22.     Upon information and belief, Petitioner Idris was not arrested or detained by the United States in the course of his participation in an armed conflict against the United States.

23.     Petitioner Idris has not been, and is not being, detained lawfully either pursuant to the Executive Order, Respondent Bush's authority as Commander in Chief and/or under the laws and usages of war.

24.     Upon information and belief, Petitioner Idris is not, and has never been, a member of Al Qaeda or any other terrorist group. Prior to his detention, he did not commit any violent act against any American person or property or espouse any violent act against any American person or property. He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.

25.     Petitioner Idris is not properly subject to the Executive Order.

**Guantánamo Bay Naval Station**

26.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to prison facilities at Guantánamo. Currently, prisoners are housed in a maximum-security interrogation and detention center at Guantánamo.

27.     By early 2002, the United States military transferred Petitioner Idris to Guantánamo, where he has been held in the custody and control of Respondents ever since.

8

28.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts.  *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

### The Conditions of Detention at Guantanamo

29.     Since gaining control of Petitioner Idris, the United States military has held him virtually *incommunicado.*

30.     Upon information and belief, and based on the experiences of other detainees, it is likely that Petitioner Idris has been, or will be, forced to provide involuntary statements to Respondents' agents at Guantánamo and interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges.

31.     Petitioner Idris has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel.  He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1951 Convention Relating to the Status of Refugees or customary international law.  Indeed, Respondents have taken the position that Petitioner Idris should not be informed of these rights.  As a result, Petitioner Idris lacks any ability to protect or to vindicate his rights under domestic and international law.

32.     Upon information and belief, Petitioner Idris has been held under conditions that violate his constitutional and international rights to dignity and freedom

from torture and from cruel, inhuman and degrading treatment or punishment.  *See*, *e.g.*,
Press Release, United Nations, *United Nations Human Rights Experts Express Continued
Concern About Situation of Guantánamo Bay Detainees* (Feb. 4, 2005) (attached hereto
as Exhibit 3); Press Release, International Committee of the Red Cross, *The ICRC's
Work at Guantánamo Bay* (Nov. 30, 2004) (attached hereto as Exhibit 4); Operational
Update, International Committee of the Red Cross, *US Detention Related to the Events of
September 11, 2001 and Its Aftermath - the Role of the ICRC* (Jul. 26, 2004) (attached
hereto as Exhibit 5); Amnesty International, *United States of America: Human Dignity
Denied: Torture and Accountability in the 'War on Terror'* (2004) at 1-32 (excerpt
attached hereto as Exhibit 6) *available at
http://web.amnesty.org/library/index/ENGAMR511452004*.; *see also* Barry C. Scheck,
*The 'New Paradigm' And Our Civil Liberties*, The Nat'l Assoc. of Criminal Defense
Lawyers Champion, Aug. 2004 (attached hereto as Exhibit 7).

      33.      In a confidential report to the United States government, the International
Committee of the Red Cross ("the ICRC") charged the U.S. military with intentional use
of psychological and physical coercion on prisoners during interrogations at Guantánamo
that is "tantamount to torture."  *See* Neil A. Lewis, "*Red Cross Finds Detainee Abuse in
Guantánamo*," N.Y. Times, Nov. 30, 2004 at A1 (attached hereto as Exhibit 8).  The
report includes claims that doctors and other medical workers at Guantánamo participated
in planning for interrogations.  *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks,
*When Doctors Go to War*, New England Journal of Medicine, Jan. 6, 2005, at 3-4
(attached hereto as Exhibit 9).  Since details of the ICRC's report emerged, new

10

revelations of abuse and torture at Guantánamo have appeared, including FBI memos

detailing torture and "highly aggressive interrogation techniques" that include 24-plus

hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud

music. *See* Amnesty International, *Guantánamo: An Icon of Lawlessness,* 3-5 (Jan. 2005)

(attached hereto as Exhibit 10); *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh*

*Methods at Guantánamo*, N.Y. Times, Jan. 1, 2005 at A11 (attached hereto as Exhibit

11); Carol D. Leonnig, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in*

*FBI Memos*, Wash. Post, Dec. 26, 2004 at A1 (attached hereto as Exhibit 12); Neil A.

Lewis and David Johnston, *New F.B.I. Files Describe Abuses of Iraq Inmates*, N.Y.

Times, Dec. 21, 2004 at A1 (attached hereto as Exhibit 13); Dan Eggen and R. Jeffrey

Smith, *FBI Agents Allege Abuse of Detainees at Guantánamo Bay*, Wash. Post, Dec. 21,

2004, at A1 (attached hereto as Exhibit 14); Neil A. Lewis, *F.B.I. Memos Criticized*

*Practices at Guantánamo*, N.Y. Times, Dec. 7, 2004, at A19 (attached hereto as Exhibit

15). Even more recently, the Associated Press has reported allegations that female

Guantánamo interrogators have used sexual taunting, including smearing fake menstrual

blood on a detainee's face, to try to break Muslim detainees. *Gitmo Soldier Details*

*Sexual Tactics*, Associated Press, Jan. 27, 2005 (attached hereto as Exhibit 16).

      34.    The unlawful and unconstitutional interrogation techniques used by

Respondents at Guantánamo include not only physical and psychological abuse but also

other impermissible conduct contrary to due process requirements, including, upon

information and belief, having agents of the Government present themselves as lawyers

for the detainees during meetings with the detainees, for the purpose of extracting

11

information from the detainees.  *See* Sam Hanamel, *Lawyers Describe Guantánamo Detainees as Emaciated, Abused*, Associated Press, Jan. 19, 2005 (attached hereto as Exhibit 17).

35.    Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer.  *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Jan. 9, 2002), (attached hereto as Exhibit 18) *available at* http://slate.msn.com/features/whatistorture/pdfs/020109.pdf; Department of Defense, *Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 61-71 and Exh. 1 (Apr. 4, 2003), *available at* http://www.pentagon.mil/news/Jun2004/d20040622doc8.pdf  (excerpt attached hereto as Exhibit 19).[1]

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees.  *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay* 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo compositestatementFINAL23july04.pdf) (attached hereto as Exhibit 20).  The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility.  *See U.S. Report Details Guantanamo Abuses*, Associated Press, Nov. 5, 2004 (attached hereto as Exhibit 21).

22002811v8

36.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush.  Eric Lichtblau, *Gonzales Says Humane-Policy Order on Detainees Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005, at A17 (attached hereto as Exhibit 22); Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, Wash. Post, Jan. 19, 2005, at A4 (attached hereto as Exhibit 23).

37.     Upon information and belief, Petitioner Idris is at risk of being subject to the above coercive and unlawful interrogation techniques, violating his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment.

38.     In published statements, Respondent Bush and Respondent Rumsfeld, and predecessors of Respondents Hood and Bumgarner, including Marine Brig. Gen. Mike Lehnert, have proclaimed that the United States may hold the detainees under their current conditions indefinitely.  *See, e.g.,* Roland Watson, *British Team to Question Cuba Detainees*, The Times (London), Jan. 18, 2002 (attached hereto as Exhibit 24) ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, *Detainee Camp Getting More Scrutiny*, Associated Press, Jan. 22, 2002 (attached hereto as Exhibit 25) ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended

13

the temporary cells where detainees are being held . . . .  'We have to look at Camp X-ray

as a work in progress . . .' Lehnert told CNN.  Lehnert said plans are to build a more

permanent prison 'exactly in accordance with federal prison standards . . . ."); John

Mintz, *Extended Detention in Cuba Mulled; Officials Indicate Guantanamo Bay Could

Hold Tribunals, Carry Out Sentences*, Wash. Post, Feb. 13, 2002 at A16 (attached hereto

as Exhibit 26) ("As the Bush Administration nears completion of new rules for

conducting military trials of foreign detainees, U.S. officials say they envision the naval

base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony

for many years to come.").

>   39.    According to the Department of Defense, even detainees who are

adjudged innocent of all charges by a military commission may nevertheless be kept in

detention at Guantánamo indefinitely.  *See* Press Background Briefing, Department of

Defense (Jul. 3, 2003), *at* http://www.defenselink.mil/transcripts/2003/tr20030703-

0323.html  (attached hereto as Exhibit 27).

>   40.    Counsel for Respondents have also consistently maintained that the United

States has reserved the right to hold the detainees under their current conditions

indefinitely.  Transcript of Oral Argument at 20-25, *Benchallali v. Bush*, No. 04-CV-

1142 and *Boumediene v. Bush,* No. 04-CV-1166 (D.D.C. Dec. 2, 2004) (statements of

Principal Deputy Associate Attorney General Brian Boyle) (excerpt attached hereto as

Exhibit 28); *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash.

Post, Jan. 2, 2005, at A1 (attached hereto as Exhibit 29).  Moreover, the Government has

recently acknowledged plans to begin constructing another permanent facility at

Guantánamo.  Christopher Cooper, *Detention Plan:  In Guantánamo, Prisoners Languish in a Sea of Red Tape—Inmates Waiting To Be Freed Are Caught In Uncertainty; Improvising Along the Way—A Split Over Interrogations,* Wall St. J., Jan. 26, 2005, at A1 (attached hereto as Exhibit 30); *Guantánamo Takes on the Look of Permanency*, Associated Press, Jan. 9, 2005 (attached as Exhibit 31).

### Rendition

41.    Upon information and belief, during interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture.  The United States has secretly transferred detainees to such countries for detention in those countries without complying with the applicable legal requirements for extradition.

42.    This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture while in detention in other countries.  *See* Jane Mayer, *Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program*, New Yorker, Feb. 14, 2005, at 106 (attached as Exhibit 32).

43.    The U.S. government's practice of rendition has been well documented by various major American and international news organizations, including, among others, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC").  According to news accounts,

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources.  The suspects

15

> have been taken to countries . . . whose intelligence
> services have close ties to the CIA and where they can be
> subjected to interrogation tactics -- including torture and
> threats to families -- that are illegal in the United States, the
> sources said. In some cases, U.S. intelligence agents remain
> closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *"U.S. Behind Secret Transfer of Terror Suspects*,"
Wash. Post, Mar. 11, 2002, at A1 (attached as Exhibit 33); *see also* Dana Priest, *"Long Term Plan Sought for Terror Suspects*," Wash. Post, Jan. 2, 2005, at A1 (attached as Exhibit 29) ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt …, that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

44.    Upon information and belief, Petitioner Idris is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

45.    Upon information and belief, Petitioner Idris has a legitimate fear of imminent harm if rendered to any other country, including his home country of Sudan, due to the heightened risk of incarceration, torture, and persecution.

46.    The rendering of Petitioner Idris to Sudan or to another country for interrogation and torture would violate the Convention Against Torture and other Cruel and Degrading Treatment and Punishment, the international Covenant on Civil and Political Rights, and the Third and Fourth Geneva Conventions.  This Court has jurisdiction to address the potential rendition of Petitioner Idris pursuant to 28 U.S.C. §§2241(c)(1) and 1350.

**IV.**
**CAUSES OF ACTION**

FIRST CLAIM FOR RELIEF
(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -
UNLAWFUL DEPRIVATION OF LIBERTY)

47.     Petitioner Idris incorporates by reference all preceding paragraphs as if set

forth fully herein.

48.     By the actions described above, Respondents, acting under color of law,

have violated and continue to violate common law principles of due process as well the

Due Process Clause of the Fifth Amendment to the Constitution of the United States.

Respondent Bush has ordered the prolonged, indefinite, and arbitrary detention of

individuals, without due process of law, and the remaining Respondents have

implemented those orders.  Respondents' actions deny Petitioner Idris the process

accorded to persons seized and detained by the United States military in times of armed

conflict as established by the United States Constitution, the Uniform Code of Military

Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Geneva

Conventions, and customary international law as reflected, expressed, and defined in

multilateral treaties and other international instruments, international and domestic

judicial decisions, and other authorities.

49.     To the extent that Petitioner Idris' detention purports to be authorized by

the Executive Order (despite the fact that the Order has not been authorized by

Congress), the Executive Order violates the Fifth Amendment on its face and as applied

to Petitioner.

17

50.    Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

<u>SECOND CLAIM FOR RELIEF</u>
<u>(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION
OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)</u>

51.    Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

52.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Idris to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

53.    Accordingly, Petitioner Idris is entitled to habeas, declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

<u>THIRD CLAIM FOR RELIEF</u>
<u>(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)</u>

54.    Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

55.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Idris the process accorded to persons seized and detained by the United States military in times of armed conflict as established by the Third and Fourth Geneva Conventions.

56.    Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

18

57.     Respondents are liable for the conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

58.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
ARBITRARY DENIAL OF DUE PROCESS)

59.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

60.     By the actions described above, Respondents have denied and continue to deny Petitioner Idris the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

61.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - TORTURE)

62.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

63.     By the actions described above, the Respondents, upon information and belief, directed, ordered, confirmed, ratified, and/or conspired to bring about acts that

19

deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Idris in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Idris or for other purposes.

64.     Upon information and belief, abuses included holding Petitioner Idris in conditions of isolation; making him constantly vulnerable to repeated interrogation and severe beatings; keeping him in cages with no privacy; shackling him with heavy chains and irons; placing him in solitary confinement for minor rule infractions for prolonged periods of time; interrogating him while shackled and chained in painful positions; exposing him to extreme temperatures; subjecting him to violence or to the threat of violence; threatening him with rendition to countries that practice torture; sexually humiliating him; denying him access to counsel and family; depriving him of adequate medical care; and subjecting him to repeated psychological abuse.

65.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

66.     Respondents are liable for such conduct to the extent they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit such acts of torture against Petitioner Idris.

67.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

20

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

68.    Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

69.    Upon information and belief, the acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Idris, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

70.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.    Respondents are liable for such conduct to the extent that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Idris.

72.    Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

73.    Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

21

74.    The acts described herein constitute arbitrary arrest and detention of Petitioner Idris in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.    Respondents are liable for such conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Idris in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

76.    As a result of Respondents' unlawful conduct, Petitioner Idris has been and continues to be deprived of his freedom, separated from his family, and upon information and belief, forced to suffer severe physical and mental abuse.

77.    Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

EIGHTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE)

78.    Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

79.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Idris in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

80.     As a result of Respondents' unlawful conduct, Petitioner Idris has been and continues to be deprived of his freedom, separated from his family and, upon information and belief, forced to suffer severe physical and mental abuse.

81.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION - UNLAWFUL DETENTION)

82.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

83.     Petitioner Idris is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.

84.     The Executive Branch lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2642 (2004).

85.    By the actions described above, Respondent Bush has exceeded and continues to exceed his authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Idris and transfer him to military detention, and by authorizing and ordering his continued military detention at Guantánamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Idris.

86.    The military seizure and detention of Petitioner Idris by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution. To the extent that Respondents assert that Petitioner's detention is authorized by the Executive Order, that Order exceeds Respondent Bush's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner Idris.

87.    To the extent that Respondents assert that their authority to detain Petitioner Idris derives from a source other than the Executive Order, including without limitation Respondent Bush's inherent authority to conduct foreign affairs or to serve as Commander in Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack such authority as a matter of fact and law.

88.    Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

<u>TENTH CLAIM FOR RELIEF</u>
<u>(VIOLATION OF THE ADIMINSTRATIVE PROCEDURES ACT -</u>
<u>ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)</u>

89.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

90.     Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States.  *See*, *e.g.*, Army Reg. 190-8 at 1-6(g) (attached as Exhibit 34) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

91.     By arbitrarily and capriciously detaining Petitioner Idris in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

92.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

<u>ELEVENTH CLAIM FOR RELIEF</u>
<u>(VIOLATION OF THE ADMINSTRATIVE PROCEDURES ACT -</u>
<u>ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )</u>

93.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

94.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Idris the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

95.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate.

**TWELFTH CLAIM FOR RELIEF**
**(VIOLATION OF THE ADMINSTRATIVE PROCEDURES ACT -**
**TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)**

96.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

97.     By the actions described above, the Respondents, upon information or belief, have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Idris to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

98.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

**THIRTEENTH CLAIM FOR RELIEF**
**(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)**

99.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

26

100.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Idris' right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Idris' attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

101.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

102.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

103.     Upon information and belief, Petitioner Idris is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

104.     Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

105.     Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

22002811v8

106.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85 (1984), and the 1951 Convention and 1967 Protocol Relating to the Status of Refugees, 19 U.S.T. 6259.

107.    Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - RENDITION)

108.    Petitioner Idris incorporates by reference all preceding paragraphs as if set forth fully herein.

109.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

110.    Accordingly, Petitioner Idris is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

28

## V.
## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court grant the following relief:

1.      Issuing the Writ of Habeas Corpus and ordering Respondents to release Petitioner Idris from his current unlawful detention;

2.      Ordering that Petitioner Idris be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

3.      Ordering that Petitioner Idris cannot be transferred to any other country without his specific written agreement or the written agreement of his counsel while this action is pending;

4.      Ordering that Petitioner Idris cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

5.      Ordering Respondents to allow counsel to meet and confer with Petitioner Idris, in private and unmonitored attorney-client conversations;

6.      Ordering Respondents to cease all interrogations of Petitioner Idris while this litigation is pending;

7.      Ordering Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Idris;

8.      Ordering and declaring the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States

29

Constitution, the Fifth Amendment to the United States Constitution, the Uniform

Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the

treaties of the United States and/or customary international law;

      9.     Ordering and declaring that the prolonged, indefinite, and

restrictive detention of Petitioner Idris without due process is arbitrary and

unlawful and a deprivation of liberty without due process in violation of common

law principles of due process, the Due Process Clause of the Fifth Amendment to

the United States Constitution, the regulations of the United States military, the

treaties of the United States, and/or customary international humanitarian law;

and

      10.    Granting such other and further relief as the Court may deem just

or appropriate to protect Petitioner's rights under the common law, the United

States Constitution, federal statutory law, and/or international law.

30

Dated:          November 10, 2005                    Respectfully submitted,

                                                     Counsel for Petitioner:

                                                     _/s/ John B. Missing_____
                                                     John B. Missing (Bar No. 25469)
                                                     Jennifer C. Argabright (Bar. No. 480763)
                                                     DEBEVOISE & PLIMPTON LLP
                                                     555 13th Street, N.W. Ste 1100E
                                                     Washington, D.C. 20004-1169
                                                     Tel:  (202) 383 8000
                                                     Fax:  (202) 383 8118


                                                     Jeffrey I. Lang
                                                     Jennifer R. Cowan
                                                     Ellen A. Hochberg
                                                     Tatia L. Miller
                                                     DEBEVOISE & PLIMPTON LLP
                                                     919 Third Avenue
                                                     New York, NY 10022
                                                     Tel:  (212) 909-6000
                                                     Fax:  (212) 909-6386


                                                     *Of Counsel*
                                                     Barbara Olshansky
                                                     CENTER FOR CONSTITUTIONAL RIGHTS
                                                     666 Broadway, 7th Floor
                                                     New York, New York 10012
                                                     Tel: (212) 614-6439
                                                     Fax: (212) 614-6499

22002811v8

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are

representing Petitioner without compensation.


Dated:        November 10, 2005              _/s/ John B. Missing_____

                                              John B. Missing (Bar No. 425469)
                                              Jennifer C. Argabright (Bar. No. 480763)
                                              DEBEVOISE & PLIMPTON LLP
                                              555 13th Street, N.W. Ste 1100E
                                              Washington, D.C. 20004-1169
                                              Tel:  (202) 383 8000
                                              Fax:  (202) 383 8118


                                              Jeffrey I. Lang
                                              Jennifer R. Cowan
                                              Ellen A. Hochberg
                                              Tatia L. Miller
                                              DEBEVOISE & PLIMPTON LLP
                                              919 Third Avenue
                                              New York, NY 10022
                                              Tel:  (212) 909-6000
                                              Fax:  212-909-6836


                                              *Of Counsel*
                                              Barbara Olshansky
                                              CENTER FOR CONSTITUTIONAL
                                              RIGHTS
                                              666 Broadway, 7th Floor
                                              New York, New York 10012
                                              Tel: (212) 614-6439
                                              Fax: (212) 614-6499

22002811v8