UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br><br>GUANTANAMO BAY<br>DETAINEE LITIGATION | )<br>)<br>)  Misc. No. 08-442 (TFH)<br>)<br>)  Civil Action Nos.<br>)<br>)  02-CV-0828, 04-CV-1136, 04-CV-1164, 04-CV-1194,<br>)  04-CV-1254, 04-CV-1937, 04-CV-2022, 04-CV-2035,<br>)  04-CV-2046, 04-CV-2215, 05-CV-0023, 05-CV-0247,<br>)  05-CV-0270, 05-CV-0280, 05-CV-0329, 05-CV-0359,<br>)  05-CV-0392, 05-CV-0492, 05-CV-0520, 05-CV-0526,<br>)  05-CV-0569, 05-CV-0634, 05-CV-0748, 05-CV-0763,<br>)  05-CV-0764, 05-CV-0833, 05-CV-0877, 05-CV-0881,<br>)  05-CV-0883, 05-CV-0889, 05-CV-0892, 05-CV-0993,<br>)  05-CV-0994, 05-CV-0995, 05-CV-0998, 05-CV-0999,<br>)  05-CV-1048, 05-CV-1124, 05-CV-1189, 05-CV-1220,<br>)  05-CV-1236, 05-CV-1244, 05-CV-1347, 05-CV-1353,<br>)  05-CV-1429, 05-CV-1457, 05-CV-1458, 05-CV-1487,<br>)  05-CV-1490, 05-CV-1497, 05-CV-1504, 05-CV-1505,<br>)  05-CV-1506, 05-CV-1509, 05-CV-1555, 05-CV-1590,<br>)  05-CV-1592, 05-CV-1601, 05-CV-1602, 05-CV-1607,<br>)  05-CV-1623, 05-CV-1638, 05-CV-1639, 05-CV-1645,<br>)  05-CV-1646, 05-CV-1649, 05-CV-1678, 05-CV-1704,<br>)  05-CV-1725, 05-CV-1971, 05-CV-1983, 05-CV-2010,<br>)  05-CV-2083, 05-CV-2088, 05-CV-2104, 05-CV-2112,<br>)  05-CV-2185, 05-CV-2186, 05-CV-2199, 05-CV-2200,<br>)  05-CV-2249, 05-CV-2349, 05-CV-2367, 05-CV-2371,<br>)  05-CV-2378, 05-CV-2379, 05-CV-2380, 05-CV-2381,<br>)  05-CV-2384, 05-CV-2385, 05-CV-2386, 05-CV-2387,<br>)  05-CV-2398, 05-CV-2444, 05-CV-2477, 05-CV-2479,<br>)  06-CV-0618, 06-CV-1668, 06-CV-1674, 06-CV-1684,<br>)  06-CV-1688, 06-CV-1690, 06-CV-1691, 06-CV-1758,<br>)  06-CV-1759, 06-CV-1761, 06-CV-1765, 06-CV-1766,<br>)  06-CV-1767, 07-CV-1710, 07-CV-2337, 07-CV-2338,<br>)  08-CV-0987, 08-CV-1085, 08-CV-1101, 08-CV-1104<br>)  08-CV-1153, 08-CV-1185, 08-CV-1207 |

**JOINT REPORT IN RESPONSE TO COURT'S JULY 11, 2008 SCHEDULING ORDER**

Pursuant to the Court's July 11, 2008 Scheduling Order, undersigned counsel for petitioners and respondents in the above-captioned cases jointly state as follows:

**A.**

    **1.**    **Respondents' Position**

With respect to the issue of amendments to the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004, 344 F. Supp. 2d 174 (D.D.C. 2004), as supplemented by the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004; and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004, respondents have attached hereto as Exhibit 1 a proposal to amend the procedures for submitting filings to the Court. Respondents request that the Court enter an order adopting these filing procedures in the above-captioned cases and vacate the current provisions of the Amended Protective Order governing filing procedures (*i.e.*, paragraphs 46 and 47 of the Amended Protective Order as well as the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order). The amended filing procedures update and improve the process for submitting filings in two significant respects. First, petitioner's counsel would be authorized to submit filings directly on Court's electronic filing system if counsel do not believe and have no reason to believe that a filing contains classified or protected information. Second, filings containing only "protected information," as defined by the Amended Protective Order, but not classified information, would be submitted pursuant to Local

Civil Rule 5.1(j), the local rule of this Court governing under seal filings. Respondents reserve the right to seek future modifications to the Amended Protective Order and supplemental orders as appropriate.

With respect to a proposed protective order for use in cases involving "high-value detainees" ("HVDs"), respondents have proposed to counsel for HVD petitioners the protective order adopted by the Court of Appeals in HVD cases brought under the Detainee Treatment Act ("DTA"), revised to reflect matters including procedural and substantive differences between DTA cases in the Court of Appeals and habeas corpus proceedings in this Court. No agreement on the proposed HVD protective order has been reached, however, and at least some petitioners' counsel believe that the matter should be resolved through litigation, on a schedule to be determined by the Court through input of the parties at a status conference. Respondents are amenable to the Court holding a status conference to determine a schedule for litigating appropriate issues related to an HVD protective order.

    **2.**    **Petitioners' Position**

        a.  <u>Proposed Amended Protective Order</u>

Petitioners urge the Court to enter in all Guantánamo detainee habeas cases the protective order entered by Judge Green in *In re Guantánamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004). This order includes the following: (1) the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba, first issued on November 8, 2004, 344 F. Supp. 2d 174 (D.D.C. 2004); (2) the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004; and (3) the Order Supplementing and Amending Filing Procedures Contained in

2

November 8, 2004 Amended Protective Order, first issued on December 13, 2004. Petitioners refer to these orders collectively as the "Standard Protective Order."

The Standard Protective Order, as entered in *Zalita v. Bush*, No. 05-cv-1220 (RMU), is attached hereto as Petitioners' Exhibit A. This order was the product of months of negotiation, briefing and argument before Judge Green, and is fully capable of governing all Guantánamo habeas cases. *See Adem v. Bush*, 425 F. Supp. 2d 7, 10-12 (D.D.C. 2006) (describing the lengthy process by which the Standard Protective Order was created).[1]

---

[1] The Court Security Office ("CSO") has recommended additional ministerial changes to the Standard Protective Order. *See* Exhibit 1. Petitioners consent to their entry by the Court with one clarification: the government must provide to counsel and the Court a version of each court filing containing classified or protected information that is suitable for filing on the public record *within two weeks* of the original filing date. Respondents object to this proposed amendment by petitioners' counsel and request an opportunity to be heard on this point before any such requirement is adopted by the Court.
  Nothing in the above should be taken to foreclose the possibility that individual counsel may in the future propose amendments to the protective order in their particular cases to reflect special circumstances arising in those particular cases.

3

b. <u>Proposed Protective Order for "High-Value" Detainees</u>[2]

As an initial matter, Petitioners object to any reference or characterization of certain Guantánamo prisoners as "High-Value Detainees" or "HVDs," and ask this Court not to refer to any detainees by those terms. Whether a Guantánamo detainee has any intelligence "value" may only be determined, if at all, through habeas corpus, and is not relevant to whether that prisoner is entitled to habeas relief.

Petitioners contend that this Court should enter the Standard Protective Order in cases involving presumptively TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION ("TS//SCI") information. Although each case involves different facts, each case invokes the same statutory and constitutional principles, and each raises at least one common question – whether the prisoner's continued imprisonment is justified in light of constitutional principles or is unlawful. To date, the Standard Protective Order has governed habeas cases involving all levels of classified information. In fact, the Standard Protective Order specifically contemplates and is fully capable of governing filings that contain presumptively TS//SCI information.[3] Indeed, presumptively TS//SCI information has already been filed in at least one habeas case under the Standard Protective Order. *See* Motion for Hearing for Inquiry Concerning

---

[2] As indicated below, there is a dispute concerning representation of petitioner Al-Nashiri (ISN 10015). Counsel in *Al-Nashiri v. Bush*, No. 08-cv-1207 (RWR), join this response to the Court's July 11, 2008 Order. The position of counsel in *Ali Nashir v. Bush*, No. 08-cv-1085 (PLF), is uncertain. Counsel for other petitioners take no position concerning the dispute in representation.

[3] The Standard Protective Order expressly sets forth provisions to govern habeas counsel's access to TS//SCI information. *See* Amended Protective Order ¶ 9 (defining "classified information" to be used in these cases as including "any classified document or information" that has been classified as "'CONFIDENTIAL,' 'SECRET,' or 'TOP SECRET,' or additionally controlled as 'SENSITIVE COMPARTMENTED INFORMATION (SCI).'").

Destruction of Evidence Related to CIA Detainee Interrogations, *Zalita v. Bush*, No. 05-cv-1220 (RMU) (D.D.C.) (dkt. no. 82) (filed Jan. 15, 2008). At the time the original protective order was litigated before Judge Green, the government did not argue that additional provisions were necessary to protect TS//SCI information, and it should not be heard to argue otherwise now. No harm resulted from the filings in the *Zalita* case, and none would if the Standard Protective Order were entered in other cases involving presumptively TS//SCI information.[4]

Petitioners object to the government's proposed protective order, which is modeled on the protective order applicable in Detainee Treatment Act cases and contains many substantive differences from the Standard Protective Order. The disputed issues are too numerous and complex to address fully or adequately in an unclassified joint status report. Accordingly, to the extent this Court is inclined to enter a protective order that differs from the Standard Protective Order in the cases involving presumptively TS//SCI information, Petitioners request that this Court schedule separate briefing and argument on the protective order issues.[5]

If the Court chooses to order briefing and argument, a question immediately arises concerning the conditions under which counsel labors when the briefing and argument proceed. The government may argue that the protective order entered in Petitioners' Detainee Treatment Act cases should remain in place throughout briefing and argument. But that protective order is so restrictive that it would actually prevent counsel from briefing and arguing the issues fully and

---

[4] Moreover, to the extent the CSO may request further ministerial changes to the Standard Protective Order, such as modifications to the procedures for transporting legal mail containing presumptively TS//SCI information, Petitioners will attempt to reach agreement with the CSO and the government on those matters.

[5] Because the interests of the Petitioners in the cases in question are quite varied, they request that the Court provide the opportunity for separate briefing (rather than requesting a

adequately, and in a coordinated fashion. Petitioners thus request an initial status conference to address various issues that will plainly arise in connection with briefing and argument.

Among these particular issues, Petitioners must be permitted to disclose presumptively TS//SCI information to this Court in their briefs and argument in order to ensure full and adequate consideration of all relevant protective order issues. Petitioners' TS//SCI security-cleared counsel also must be permitted to share presumptively TS//SCI information among themselves in order to make a single coordinated presentation to this Court. But pursuant to the terms of the protective order that currently governs counsel access to Petitioners in their Detainee Treatment Act cases, counsel are expressly prohibited from sharing classified information with other counsel or with this Court absent permission from the Justice Department.

The ability to share presumptively TS//SCI information is a particularly important issue that potentially cuts across numerous Guantánamo detainee habeas cases. In any hypothetical instances where prisoners in cases involving presumptively TS//SCI information may have inculpated other Guantánamo prisoners while under torture, including military commission defendants, or perhaps federal criminal defendants, counsel for those prisoners or defendants would require some mechanism to discover and test exculpatory information, while maintaining privilege and an appropriate working relationship. Thus, ensuring consistency among all counsel who will require access to presumptively TS//SCI information is a further reason why this Court should enter the Standard Protective Order in all habeas cases.

---

single brief and a single representative at argument) from this group of petitioners.

Petitioners also would need to make *ex parte*, sealed submissions to the Court in order to address disputed protective order issues in context of their privileged and confidential litigation strategies. These matters should also be addressed at a status conference.

In addition, Petitioners notify this Court that they anticipate there will be substantial, material factual disputes in the cases involving presumptively TS//SCI information warranting discovery. As counsel have already informed counsel for the government, petitioner Majid Khan[6] specifically will seek to serve interrogatories and deposition notices (or subpoenas) on certain current and former senior government officials who may have exculpatory information, if any, concerning him. Khan also will seek to interview other prisoners in U.S. custody.

Finally, Petitioners request that representatives from the CIA General Counsel's Office be required to attend all proceedings before this Court in cases involving presumptively TS//SCI information. Their presence is necessary in order for them to justify or verify the positions taken on various matters, including with respect to entry of a protective order, and on the ground that these officials appear to be the sole decision-makers with settlement authority in these cases. The Special Litigation Team, as counsel for the Privilege Review Team, should also be involving in briefing and argument concerning protective order issues.

**B.** With respect to duplicate petitions that were filed on behalf of a single individual, the parties have taken significant steps to resolve this issue. The problem of duplicate petitioners arises primarily because of two habeas petitions filed in late 2005 involving, collectively, over two hundred petitioners: *Mohammon v. Bush*, 05-CV-2386 (RBW) and *Al-Halmandy v. Bush*, 05-CV-2385 (RMU). These two petitions sought habeas relief on behalf of many petitioners that

---

[6]  Khan's habeas case is *Khan v. Bush*, 06-cv-1690 (RBW).

had previously-filed habeas actions already pending on their behalf. Since the filing of these two cases, counsel for petitioners and respondents have worked together to identify only those petitioners in the cases who do not have duplicate habeas petitions pending before the District Court and have not been transferred or released from Guantanamo Bay. The thirty petitioners in the *Mohammon* case that meet this criteria are listed in Exhibit 2.[7] A list of the seven petitioners in the *Al-Halmandy* case that meet this criteria listed in petitioner's individual status report attached hereto as Exhibit 3.[8] The parties are in agreement that the remaining petitioners in the two cases not listed in Exhibits 2 & 3 should be dismissed without prejudice. Petitioners, however, reserve the right to reinstate the dismissed petitions, if necessary, as to those petitioners who may have been transferred or released from Guantanamo Bay.

Assuming the dismissal of the aforementioned petitioners in the *Mohammon* and *Halmandy* cases, and excluding the duplicate petitions that have already been dismissed, as well as the cases pending before Judges Leon and Sullivan that are not consolidated herewith, the parties are aware of only two duplicate petitions. First, petitioner Younis Shakur (ISN 197) in *Imran v. Bush*, 05-764 (CKK) has a previously-filed petition pending in *Al-Wazan v. Bush*, 05-CV-329 (PLF). Respondents' position is that the petitioner should be dismissed from the later-filed case (*Imran*) and should proceed in the earlier- filed case (*Al-Wazan*). Petitioner's counsel is willing to proceed in the earlier-filed action, should the Court prefer. Second, petitioner Abddul Rahim Hussein Muhammed Ali Nashir (ISN 10015) in *Ali Nashir v. Bush*, 08-CV-1085

---

[7] Respondents note that the issue of whether petitioner Ahmed Omar (ISN 30) proceeds in the *Mohammon* case or a later-filed case before Judge Sullivan, *Al Hakimi v. Bush*, 08-CV-1111 (EGS), has not been resolved.

[8] Respondents note that they are still in the process of verifying the proposed identifications of petitioners Nargeri, Warzly, and Saleh. Respondents will report back to the

(PLF) has a second petition pending on his behalf in *Al-Nashiri v. Bush*, 08-CV-1207 (RWR). As explained in respondents' individual status report filed on July 18, 2008 in the *Ali Nashir* case, there is a dispute among two different groups of counsel regarding the representation of petitioner Nashir. Respondents take no position at this time as to that dispute or with respect to which petition should proceed, but reserve their position on these issues as appropriate.

    **C.**    Attached hereto as Exhibit 4 is a chart listing petitioners currently detained at Guantanamo Bay whose habeas corpus cases are currently dismissed on jurisdictional grounds.[9] Petitioners request, and Respondents do not oppose, vacatur of the dismissal orders in these cases.

    **E.**[10]

        **1.**    **Respondents' Position**

Attached hereto as Exhibits 5 and 6 are charts listing the petitioners in the above-captioned cases who are approved by the Department of Defense for release or transfer from Guantanamo Bay. Exhibit 5 lists those petitioners who are approved for transfer to the control of another government for release. Exhibit 6 lists those petitioners who are approved for transfer to the control of another government for possible detention, investigation, and/or prosecution as that government deems appropriate under its own laws.

With respect to consolidation of the petitions listed in Exhibits 5 and 6 before one Judge,

---

Court in the event of a dispute regarding the identity of these petitioners.

    [9] Additional cases were dismissed on jurisdictional grounds by the District Court following the Court of Appeals decision in *Boumediene*, but many of those dismissal orders were later vacated by the District Court or by the Court of Appeals. The parties have not included a list of these cases in this report. Rather, the cases listed on Exhibit 4 are the only cases in which jurisdictionally-based dismissal orders have not been vacated.

    [10] Subsection "D" was omitted from the Court's July 11, 2008 Order.

respondents have no objection to this suggestion. However, despite the discretionary decision that these petitioners may be released from United States custody and transferred to a foreign country, they nonetheless have been determined to be enemy combatants by the United States, and there are many unique fact-specific, or country-specific circumstances that will be presented in these petitions. Thus, although Respondents do not object to consolidation, the Government reserves its rights with regard to all unresolved issues as to such detainees, including but not limited to questions about the effect of decisions of the Department of Defense approving a detainee for release or transfer, about the authority of the Department of Defense to hold such a detainee as an enemy combatant, about the assurances necessary to effectuate release from United States custody and transfer to a foreign country, and about the proper role of the judiciary in reviewing transfer determinations. *See Munaf v. Green*, 128 S.Ct. 2207, 2226 (2008).

Another issue regarding the consolidation of cases appears appropriate to note for the Court's attention. On July 10, 2008, the Court, per Judge Hogan sitting as coordinating judge, entered an order in *Mohammon v. Bush*, Civil Action No. 05-CV-2386 (Docket Number 481), consolidating the claims of two of the many petitioners in that case with the claims of six other cases, and transferring those five cases along with the claims of the two named *Mohammon* petitioners to the docket of Judge Urbina. On the same day, another order was entered, per Judge Huvelle as the Chair of the Calendar and Case Management Committee, Docket Number 483, transferring the *Mohammon* case in its entirety to the docket of Judge Urbina. Respondents respectfully request that the Court clarify whether the second order was intended to effectuate the first. If so, because the first order transferred only part of the case to Judge Urbina's docket, respondents respectfully request that the second order be reconciled with the first by clarifying

10

that the claims of only those *Mohammon* petitioners mentioned by name in Judge Hogan's order, Docket Number 481, be transferred to the docket of Judge Urbina.

### 2. Petitioners' Position[11]

As the Court has recognized in its July 11, 2008 Scheduling Order (¶2.E.), not all of the petitioners who have been cleared or authorized for release or transfer (for convenience, the "cleared petitioners") are similarly situated. For example, some seek, while others oppose, repatriation to the country of their birth; and some have individual defenses to continued detention that are not available to others. It should not be surprising, therefore, that notwithstanding a conference call and numerous other communications counsel for these more than fifty petitioners are not able to state a unified position on the subject of consolidation.

A large majority of the petitioners subscribing to this joint report oppose full consolidation and transfer of these cases to a single judge for all purposes, because they believe that each petitioner is entitled under the Supreme Court's *Boumediene* decision to a separate hearing on the merits of his individual habeas petition.

---

[11] The following response to paragraph 2.E of the July 11, 2008 Scheduling Order is submitted on behalf of the petitioners in the following proceedings, whose counsel (i) know that their clients have been cleared for release from Guantánamo, and (ii) have been able to communicate on the subject of consolidation: 04-cv-1254 (for petitioners Mohammed Mohammed Hassen, ISN 681, and Adil Said Al Haj Obeid Al Busayss, ISN 165); 05-cv-0748 (for petitioners Mohsen Abdrub Aboassy, ISN 091, Mohammed Saeed Bin Salman, ISN 251, and Sameer Najy Hasan Mukbel, ISN 043); 05-cv-0994 (for petitioner Tohirjanovich, ISN 675); 05-cv-1347 (for petitioner Farhi Saiid bin Mohammed, ISN 311); 05-cv-1353 (for petitioner Motai Saib, ISN 288); 05-cv-1497 (for petitioner Adel al Wirghi, ISN 502); 05-cv-1504 (for petitioner Nabil Hadjarab, ISN 238); 05-cv-1505 (for petitioner Abbar Sufian Al Hawary, ISN 1016); 05-cv-2349 (for petitioner Ahmed Belbacha, ISN 290); 05-cv-2386 (for petitioners Al Yafie, ISN 034, Ali Sher Hamidullah, ISN 455, El Falesteny, ISN 519, and Sayf Bin Abdallah, ISN 46); 06-cv-0618 (for petitioner Feghoul, ISN 292); 06-cv-1766 (for petitioner Hentif, ISN 259); and 08-cv-1185 (Mohammed Abd Al Al Qadir, ISN 284).

At the same time, a large (but not the same) majority of the cleared petitioners agree that it may be beneficial to coordinate the efforts to secure their transfer to countries where they will be free from persecution and to consolidate their cases for the limited but significant purpose of furthering those efforts. With due regard for separation of powers principles, a single judge handling the cases of all cleared petitioners may be able to facilitate solutions to transfer-related problems that have to date been intractable.

All of the cleared petitioners strongly oppose an indeterminate continuation of their detention, which for many is in its seventh year. Therefore, consolidation of the cases for the limited purpose described above should be without prejudice to the right of any petitioner who is prepared to proceed with an adjudication of the merits of his petition to seek at any time such an adjudication by the judge to whom the proceeding has been assigned (or, with the consent of that judge, another judge of this court).

Furthermore, the cleared petitioners ask the Court to make clear, if it orders consolidation to any extent, that (i) the government's obligations under paragraph 4 regarding factual returns and amended returns applies to cleared as well as uncleared petitioners, and (ii) cleared petitioners shall be entitled to discovery under the same conditions as uncleared petitioners. All cleared petitioners, but particularly those who continue to bear the stigma of an enemy combatant designation, are entitled to know whether the government believes that facts in addition to those in the CSRT record justify continued detention.

**F.** The parties propose that the coordinating judge enter an omnibus order providing that all *Boumediene*-related motions to dismiss and motions to stay be denied as moot, subject to the following further qualifications on which the parties do not agree, as noted.

In April 2007, respondents filed motions to dismiss in all of the above-captioned cases that were pending at that time, on the basis of section 7 of the Military Commissions Act ("MCA"), Pub. L. No. 109-366, 120 Stat. 260, and the construction and application of that statute articulated in *Boumediene v. Bush*, 476 F.3d 981, (D.C.Cir. 2007), *rev'd*, 128 S.Ct. 2229 (2008).  The Court is respectfully referred to that motion as filed in the case listed first above, which can be found at Civil Action No. 02-CV-828, Docket Number 320, which lists in its caption all the cases in which the motion was filed.  Petitioners' opposed the motions to dismiss and in many cases filed stay and abey motions.  The judges of this Court handled the motions to dismiss in a variety of ways, including granting them, holding the cases in abeyance or otherwise staying them, and forebearing from ruling on the motions.  In light of the Supreme Court's reversal of the Court of Appeals' *Boumediene* decision, the parties are in agreement that the dismissal motions are no longer warranted insofar as they were based on section 7 of the MCA.  Nor is it any longer appropriate to stay those cases.

As explained elsewhere in this Report, however, Respondents contend that dismissal of petitions brought by or on behalf of petitioners no longer at Guantanamo Bay remains appropriate.  Petitioners object to dismissal on mootness or other grounds.

Accordingly, the parties consent to the lifting of any stays in these cases.   Respondents content that the lifting of stays, however, should not render ripe any motions that are pending in these cases. Rather, motions should be calendered in accordance with respondents' suggestions in paragraph G, below.  Petitioners object and contend that motions identified in response to paragraph G, below, should be decided as set forth in Petitioners' Exhibit B attached hereto.

The action that should be taken with regard to dismissal motions, however, according to

13

Respondents, involves several additional considerations. Respondents hereby withdraw their motions to dismiss grounded on section 7 of the MCA as to all petitioners who are still at Guantanamo Bay. The habeas claims of those petitioners who are no longer at Guantanamo Bay, who are listed in Exhibit 3 of Respondents' Individual Status Report, filed on July 18, 2008, should be dismissed on the ground of mootness. Again, Petitioners object to dismissal on mootness or other grounds. Nonetheless, respondents hereby withdraw the dismissal motions made as to such petitioners insofar as they are based on section 7 of the MCA. Further, according to Respondents, the Court is alerted to the fact that almost all the petitioners in these cases have named as respondents individuals who are not custodians of Guantanamo Bay detainees, and who are therefore not proper respondents, including among the most glaring examples the President and Vice President. Claims against improperly named respondents should be promptly dismissed. Petitioners object to dismissal of the President and Vice President, and other respondents, on the ground that they are custodians of Guantanamo Bay detainees and otherwise proper respondents. Additionally, respondents contend that the habeas claims of detainees against whom charges have been sworn pursuant to the Military Commissions Act should be dismissed or held in abeyance pending resolution of those charges. Because respondents believe that not all petitioners with claims subject to dismissal as described in this paragraph would agree to such dismissals, respondents intend to propose at a later date a schedule for coordinated briefing regarding the dismissal and/or abeyance of claims in these categories. Indeed, Petitioners object to the dismissal or stay of any claims of detainees against whom charges have been sworn or may be sworn pursuant to the Military Commissions Act.

14

      **G.**     Respondents do not have any motions pending in these cases that are ripe for decision.  Petitioners have identified the motions set forth in Petitioners' Exhibit B hereto that they wish to have resolved.  Respondents propose that any motion currently pending that relates to the merits of a specific case be deferred until consideration of the merits of that case by the assigned judge, and that all other motions should be resolved in a coordinated fashion by the coordinating judge.  Petitioners object and contend that the motions should be heard in the manner set forth in Petitioners' Exhibit B.

      **H.**  Respondents propose that the coordinating judge enter an omnibus order providing that stays entered in any of these cases be lifted.

      **I.**  Attached hereto as Exhibit 7 is a chart listing the cases in which an appeal or petition for certiorari is pending.

      **J.**

           **1.**     **Respondents' Position**

Respondents propose that biweekly telephone conferences be held on the record with regard to the coordination of these matters, with the coordinating judge presiding.  Such conferences should be held in the following fashion.  By 5:00 PM on the business day immediately preceding each conference, any petitioner's counsel wishing to be heard should send an email message to a designee of respondent's counsel and to a member of the Court's staff designated by the Court.  Should respondents wish to be heard with regard to a particular petitioner's case, respondents would notify that petitioner's counsel and the Court by 5:00 on the business day immediately preceding the conference.  Should respondents wish to be heard on a more general matter, respondents would notify one attorney designated by petitioners' counsel

by 4:00 PM on the business day immediately preceding the conference. The Court would call the matters to be heard by first calling the cases in the order in which petitioner's counsel's emails are received. Any case not called at that point, as to which respondents had identified an interest in being heard, would then be called. Finally, any general matters as to which respondents have provided notice would be heard. Respondents propose that no motion other than a dispositive motion or a motion for an extension of time would be entertained by the Court unless that motion was first discussed during the course of a conference set up in accordance with this paragraph.

        **2.**      **Petitioners' Position**

        a.      Petitioners do not object to regular status conferences before the Court. However, they respectfully submit that conferences should be scheduled at the Court's discretion or at the request of counsel for any party, as needed to address specific issues, rather than on any pre-set periodic schedule (*e.g.*, every two weeks). Petitioners believe there may not always be sufficient business before the Court to justify holding a regular status conference at which hundreds of petitioners' counsel will feel obligated to appear (even when they have no specific request pending before the Court).

        b.      Petitioners request that counsel not located in Washington, DC, be permitted to appear by telephone at status conferences, without restrictions as to the number of counsel appearing. The government takes no position on this request.

        c.      Petitioners further request that counsel be permitted to appear and participate directly in any status conferences that may impact their individual clients. Petitioners object to any requirement that they designate other representative counsel to speak on behalf of

their clients at status conferences. The government takes no position on this request. However, Respondents have proposed other procedures to govern status conferences, including with respect to counsel registering in advance their intention to appear and participate, to which Petitioners object.

    d.  Petitioners also object to any proposal that the parties be required to propose motions to the Court at a status conference prior to filing any non-dispositive motions. This seems to us a thinly-disguised version of the government's earlier request that the Court require pre-motion conferences before motions may be filed. There already exists a requirement that the parties confer before filing non-dispositive motions, *see* LCvR 7(m), a requirement which the judges in this district have strictly enforced. The government has not demonstrated that a problem exists – for example, it has not shown that counsel for petitioners have filed duplicative, over-numerous, or frivolous motions in the past, nor could it. There is no need to create additional layers of procedure (whose burdens will primarily affect petitioners, as the parties seeking relief here) as a solution to a non-existent problem.

 **K.**

    **1.**  **Respondents' Position**

Respondents have agreed to provide to a petitioner's counsel the unclassified portions of the CSRT record pertaining to that petitioner, where petitioner's counsel have not previously had access to the unclassified or classified CSRT record either through habeas litigation or litigation in the Court of Appeals under the Detainee Treatment Act. Respondents anticipate providing such unclassified materials by July 31, 2008, or shortly thereafter. If this undertaking is not complete by July 31, 2008, respondents will provide a status report to the Court on August 1,

17

2008, updating the Court regarding the matter and providing an anticipated completion date.

  **2.**  **Petitioners' Position**

  a.  Petitioners understand that the government is attempting to produce unclassified CSRT records by July 31, 2008, but that they may be unable to do so in every case. Petitioners object to any delay in production of the unclassified records after July 31, 2008.

  b.  The government has also refused to state whether it will permit Petitioners to use in their habeas cases the classified records that were produced in connection with their Detainee Treatment Act cases. Absent the ability to use that information in their habeas cases, Petitioners' counsel may not necessarily be able to provide the Court with all relevant information concerning their clients; and their clients may be required to wait weeks or months to receive factual returns containing information that they already know, thereby delaying their habeas cases unnecessarily.

Dated: July 21, 2008

Respectfully submitted,

/s/ Shayana D. Kadidal
Shayana D. Kadidal (D.C. Bar No. 454248)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6438
Fax:  (212) 614-6499

On Behalf of Petitioners with Consent[*]

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

   /S/    Andrew I. Warden
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR
TERRY M. HENRY
ANDREW I. WARDEN (IN Bar No. 23840-49)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents

---

[*] Except as noted herein.